**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**July 8, 2005**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 04-60916
(Summary Calendar)

THE SANDERSON GROUP,

Plaintiff-Appellant,

versus

MORRIS-SHEA BRIDGE; ET AL,

Defendants,

MORRIS-SHEA BRIDGE and TRAVELERS
CASUALTY & SURETY COMPANY,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Mississippi
No. 2:02-CV-896

Before WIENER, BENAVIDES, and STEWART, Circuit Judges.

PER CURIAM:[*]

The Sanderson Group, Inc. ("Sanderson") is a one-man Louisiana corporation owned and

operated by Dave Sanderson. This suit commenced when Sanderson sought costs in a Mississippi

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

Chancery Court for repairs for alleged damages caused to a construction crane it rented to Morris-Shea Bridge Co., Inc.("Morris-Shea").[1] Sanderson's action also alleged a claim for breach of contract, contending that Morris-Shea failed to provide proper notice of termination of its rental agreement, as was required under the terms of their agreement. The matter was removed to the United States District Court for the Southern District of Mississippi pursuant to diversity jurisdiction, and the case was tried in a two-day bench trial. The district court took the matter under advisement, and subsequently made extensive findings of fact and conclusions of law. Based on these findings and conclusions, the district court rendered judgment in favor of Morris-Shea and its surety, Travelers Casualty and Surety Company of America ("Travelers Casualty") (collectively "the defendants"). Sanderson now appeals from that judgment and the dismissal of its claims with prejudice. For the reasons stated below, the final judgment of the district court is AFFIRMED.

## BACKGROUND

In January of 2000, K.R. Borries Construction Company ("Borries") leased a 1965 model 4000 W Manitowoc crane ("the crane") to Morris-Shea. The lease provided for a month-to-month rental fee in the amount of $8,000 per month. It also provided, inter alia, that Morris-Shea maintain and return the crane in good and working condition and that Morris-Shea provide a 30-day written notice before terminating the lease. The district court found that Morris-Shea received the crane in poor working condition, but that the crane was sufficient to meet Morris-Shea's particular needs.

In February of 2000, Borries sold the crane to Sanderson for approximately $200,000. As part of the sales agreement, Borries assigned Morris-Shea's lease agreement to Sanderson. The

---

[1] From what can be gleaned from the record, it appears that the suit was filed in Mississippi because that was the location of the construction site and the place where the contract was formed.

district court determined that Morris-Shea ceased using the crane in September of 2000 and that Morris-Shea returned the crane in good and working condition. The record indicates that evidence was presented suggesting that the crane was in better condition than when Morris-Shea received it, and that Sanderson implicitly acknowledged that fact when it advertised the crane as being in excellent condition in December of 2000. Notwithstanding this advertisement, Sanderson sent invoices to Morris-Shea in October of 2001, more than a year after Morris-Shea ceased using the crane, for reimbursement of repairs Sanderson made to the crane. After an unsuccessful demand for payment, Sanderson filed this suit in November of 2001. The case was removed to the district court in December of 2002. Final judgment in favor of the defendants was entered in September of 2004, and this appeal by Sanderson ensued.

## DISCUSSION

### A. Damages For Costs of Repairs[2]

Sanderson claims that during the course of the lease Morris-Shea abused and damaged the crane, and that pursuant to the terms of the lease agreement Morris-Shea is liable for the costs Sanderson spent on repairs. The parties agreed to bench try their factual dispute concerning the responsibility for damages to the crane. Based on the evidence presented, the district court concluded that Sanderson did not meet its burden of proving that Morris-Shea caused damage to the crane as was alleged. Accordingly, the court concluded that Sanderson failed to establish its claim that Morris-Shea was liable under the contract for those costs. After a through review of the record in this case, we conclude that there was ample evidence presented to support the district court's findings

---

[2] Following a bench trial, we review a district court's conclusions of law de novo and its findings of fact for clear error. FED. R. CIV. PROC. 52(a); see also Am. Int'l. Specialty Lines Ins. Co. v. Canal Indem., 352 F.3d 254 (5th Cir. 2003).

that Morris-Shea did not cause the damage to the crane and that it returned the crane in good working condition pursuant to the terms of the agreement. Accordingly, Sanderson's claim that Morris-Shea is liable for breach of contract as to this claim is without merit.

### B. Breach of the Equipment Rental Agreement

Sanderson next claims that Morris-Shea failed to properly terminate the lease in writing as required under the lease agreement. Relying on Mississippi contract law, the district court determined that the lease was properly terminated when Morris-Shea made an additional $8000 payment for Morris-Shea's extended thirty day rental period. The court further determined that when Sanderson accepted the $8,000, it waived its right to written notice under the contract. We agree.

Under Mississippi law, "a party to a contract may by words or conduct waive a right to which he would otherwise have been entitled." Canizaro v. Mobile Communications Corp., 655 So.2d 25, 29 (Miss. 1995); see also Eastline Corp. v. Marion Apts., Ltd., 524 So. 2d 582, 584 (Miss. 1988) (finding that the parties, through their conduct, had waived their contractual provision requiring that all changes to the contract be executed in writing); accord Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp., 743 So. 2d 954, 964 (Miss. 1999). The Mississippi Supreme Court has instructed that "[t]he existence of waiver is a factual determination to be made by the trial court." Scott Addison Constr., Inc. v. Lauderdale County Sch. Sys., 789 So. 2d 771, 776 (Miss. 2001).

The district court determined that Morris-Shea began renting the crane in January of 2000 and that it ceased using it around September of that year. It is undisputed that Morris-Shea did not provide written notice to Sanderson prior to the time it discontinued use of the crane. Notwithstanding, the record suggests that sometime before August of 2000, Morris-Shea orally

4

advised Sanderson that it was discontinuing use of the equipment in August of 2000. The record indicates that by September of 2000, Sanderson had knowledge that Morris-Shea had ceased using the crane. As a result of Morris-Shea's failure to provide written notice as prescribed in the agreement, Sanderson sent Morris-Shea a certified letter on September 6, 2000, advising Morris-Shea that it had not properly terminated the lease agreement. The letter also suggested that the parties meet to discuss the proper method of closing the lease and that at the meeting the parties hold a joint-survey of the machine to "determine what remedial action [would be] required to place the machine in the proper state of repair, prior to the termination of the lease."

Morris-Shea presented testimony that in response to Sanderson's letter, it sent its then equipment manager, Jerry Mitchell, to confer with Sanderson at the work site, and that at the meeting Mitchell gave Sanderson a handwritten note indicating Morris-Shea was terminating the lease. The district court also heard testimony that Morris-Shea agreed to one month's extra rent to settle the termination of lease issue and that Sanderson agreed to accept the $8,000 payment to resolve the matter. The record reflects that a Morris-Shea check, # 29510, was paid to Sanderson on September 26, 2000. The record also reflects that not until more than a year after the September meeting were further invoices by Sanderson sent to Morris-Shea requesting payment for rents. In fact, the district court determined that no correspondence whatsoever was sent by Sanderson to Morris-Shea until September 19, 2001, when Sanderson sent a letter demanding over $18,000 for reimbursement for repairs it made to the crane.

Based upon our thorough review of this record, we hold that the district court identified the correct principle of law when it applied the Mississippi doctrine of waiver. Moreover, there is more than sufficient evidence to support the district court's finding that Sanderson waived its right under

5

the contract to written notice when it accepted the final $8,000 rental payment.  For these reasons, we do not conclude that the district court's finding of waiver was clear error.[3]

## **CONCLUSION**

For the foregoing reasons, the final judgment of the district court dismissing Sanderson's breach of contract claims against Morris-Shea is affirmed.

AFFIRMED.

---

[3] Because the district court correctly disposed of the breach of contract issue pursuant to the doctrine of waiver, the issue raised in Sanderson's brief of whether Morris-Shea successfully met its burden of proving accord and satisfaction pursuant to Mississippi Code § 75-3-311 is moot.